**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| IN MOTION ORTHOPAEDICS WEST, INC., | § § § | |
| Plaintiff, | § § § | |
| v. | § § § | Case No. 26-CV-532 |
| JOHN (GREG) MCFARREN AND STRYKER EMPLOYMENT COMPANY, LLC | § § § § | |
| Defendants. | § § | |

**DEFENDANT JOHN (GREG) MCFARREN'S**
**ANSWER TO PLAINTIFF'S VERIFIED AMENDED COMPLAINT**

Defendant John (Greg) McFarren ("McFarren") files this Answer to Plaintiff IN Motion Orthopaedics West, Inc.'s ("IN Motion") Verified Amended Complaint ("Complaint"). In support, McFarren states as follows:

**NATURE OF THE CASE**

1. This is an action for injunctive relief and damages to stop the immediate misappropriation of trade secrets and the violation of post-termination restrictive covenants by a former employee, Greg McFarren, acting in active concert with his new employer, Stryker.

**RESPONSE: The allegations in Paragraph 1 consist of legal conclusions to which no response is required. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 1.**

2. McFarren, a former Regional Sales Manager for IN Motion, is currently violating his non-competition and non-solicitation obligations by working for Stryker—a direct competitor—in Northern Illinois, the exact territory he managed and was contractually prohibited from covering for 18 months post-termination.

**RESPONSE: McFarren admits that he was formerly employed by IN Motion as a Regional Sales Manager. McFarren denies the remaining allegations in Paragraph 2.**

3.      McFarren and Stryker are actively leveraging IN Motion's confidential pricing strategies to undercut IN Motion's proposals for robotic capital equipment with established customers, including Loyola University Health System. The harm is occurring presently and causing irreparable damage to IN Motion's business relationships, necessitating immediate injunctive relief.

**RESPONSE: McFarren denies the allegations in Paragraph 3.**

### THE PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff IN Motion is an Indiana corporation with its principal place of business located at 7684 Crosspoint Commons, Fishers, Indiana 46038.

**RESPONSE: McFarren lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.**

5.      Defendant John (Greg) McFarren is a natural person and, upon information and belief, a citizen of the State of Illinois residing at 1914 W Summerdale Ave., Chicago, IL 60640.

**RESPONSE: McFarren admits the allegations in Paragraph 5.**

6.      Defendant Stryker is, upon information and belief, a New Jersey limited liability company with its principal place of business in Michigan, which transacts substantial business in this judicial district. The sole member of Stryker is Howmedica Osteonics Corp., which is a New Jersey corporation with its principal place of business in Michigan.

**RESPONSE: McFarren lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies them.**

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because IN Motion's claims for trade secret misappropriation arise under the federal Defend Trade Secrets

2

Act, 18 U.S.C. § 1836. Consequently, this Court has supplemental jurisdiction over IN Motion's inextricably intertwined state-law claims for breach of contract, tortious interference, and violations of the Indiana Uniform Trade Secrets Act pursuant to 28 U.S.C. § 1367(a), as those claims derive from the exact same common nucleus of operative facts and form part of the same case or controversy.

**RESPONSE: The allegations in Paragraph 7 consist of legal conclusions to which no response is required. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 7.**

8. Second, and alternatively, this Court has independent diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between the parties. Plaintiff IN Motion is a citizen of Indiana, Defendant John (Greg) McFarren is a citizen of Illinois, and Defendant Stryker is a citizen of New Jersey and Michigan and its sole member is citizen of New Jersey and Michigan. Furthermore, the amount in controversy—which includes the threatened permanent loss of customer goodwill, the diversion of future revenue from restricted accounts including Loyola University Health System, and the compromise of proprietary pricing trade secrets—substantially exceeds the statutory threshold of $75,000, exclusive of interest and costs.

**RESPONSE: The allegations in Paragraph 8 consist of legal conclusions to which no response is required. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 8.**

9. Venue is proper in this District over Defendant McFarren pursuant to the mandatory forum selection clause in Section 13.3 of the Agreement, which expressly states:

> Governing Law. In view of the fact that a primary office of IN Motion is located in the State of Indiana, it is understood and agreed that the construction and interpretation of this Agreement shall at all times and in all respects be governed by the laws of the State of Indiana. Any action pursuant to this Agreement shall be

brought in Indiana state courts in Marion County or in the Federal District Court governing Marion County, Indiana, and such courts shall have proper jurisdiction over the subject matter and parties to such action, and the parties hereto agree that venue is proper in such courts and no party shall object to such venue on the basis of forum non-conveniens or otherwise.

(Employee Agreement, at § 13.3, attached as Exhibit 1.)

**RESPONSE: The allegations in Paragraph 9 consist of legal conclusions and the Agreement speaks for itself—both of which no response is required. To the extent Paragraph 9 is inconsistent with the terms of the Agreement or a response is deemed required, McFarren denies the allegations contained in Paragraph 9.**

10.     Venue is likewise proper over Defendant Stryker under 28 U.S.C. § 1391(b)(2), as Stryker intentionally directed its tortious interference at IN Motion, an Indiana corporation, causing substantial injury and the misappropriation of property situated within this District.

**RESPONSE: The allegations in Paragraph 10 consist of legal conclusions to which no response is required. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 10.**

11.     This Court has personal jurisdiction over Defendant McFarren because he has purposely availed himself of the privilege of conducting business within the State of Indiana by entering into an Employee Agreement with Plaintiff IN Motion, an Indiana corporation. Personal jurisdiction over McFarren is further proper under Indiana's long-arm statute as the claims asserted herein arise directly from his acts of doing business and entering into a contractual relationship with an Indiana-based entity. Ind. R. Trial P. 4.4(A)(1). Further, and most important, McFarren expressly consented to the personal jurisdiction of this Court under Section 13.3 of the Agreement.

**RESPONSE: The allegations in Paragraph 11 consist of legal conclusions and the Agreement speaks for itself—both of which no response is required. To the extent Paragraph 11 is**

**inconsistent with the terms of the Agreement or a response is deemed required, McFarren denies the allegations contained in Paragraph 11.**

12.    Similarly, this Court has personal jurisdiction over Defendant Stryker under Indiana's long-arm statute because Stryker does business in the state and its tortious interference with the contractual relationship between IN Motion and McFarren constitutes a tortious act aimed at an Indiana corporation, causing injury within this State. Ind. R. Trial P. 4.4(A)(1)-(2).

**RESPONSE: The allegations in Paragraph 12 consist of legal conclusions to which no response is required. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 12.**

**BACKGROUND FACTS**

13.    On or about June 29, 2024, IN Motion and McFarren entered into an Employee Agreement (the "Agreement"), attached hereto as Exhibit 1.

**RESPONSE: McFarren admits the allegations in Paragraph 13.**

14.    McFarren was employed as a Sales Manager/Regional Manager for IN Motion. His responsibilities included managing team leaders and sales representatives in Northern Illinois.

**RESPONSE: McFarren admits that he was employed by IN Motion as a Sales Manager/Regional Manager. McFarren further states that the term "Northern Illinois" is vague and undefined as used in Paragraph 14, and therefore denies the remaining allegations in Paragraph 14.**

15.    In this management role, McFarren was involved in and responsible for joint reconstruction implant sales, contracting, proprietary pricing strategies, capital sales, and robotic equipment sales, rentals, and leasing.

**RESPONSE: McFarren admits the allegations in Paragraph 15.**

16.    Due to his position, McFarren had access to IN Motion's trade secrets, including the profit margins, pricing thresholds, and strategic acquisition proposals related to IN Motion's robotic capital equipment and DePuy Synthes products.

**RESPONSE: The allegations in Paragraph 16 consist of legal conclusions to which no response is required. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 16.**

17.    In exchange for his employment and access to these trade secrets, McFarren agreed to non-disclosure, non-competition, and non-solicitation obligations.

**RESPONSE: McFarren denies the allegations in Paragraph 17.**

18.    Section 6 of the Agreement prohibits the disclosure of Confidential Information, stating:

> NON-DISCLOSURE. Employee hereby agrees that Employee shall not use for any purpose, and will not directly or indirectly disseminate or disclose to any other person or entity, any Confidential Information (as hereinafter defined) except in the course and furtherance of Employee's employment with IN Motion.

(Ex. 1, at § 6.)

**RESPONSE: The Agreement speaks for itself. To the extent Paragraph 18 is inconsistent with the terms of the Agreement, McFarren denies the remaining allegations in Paragraph 18.**

19.    Section 7 of the Agreement restricts solicitation, stating:

> NON-SOLICITATION. During the period of Employee's employment, and for a period of two (2) years following the Termination Date, the Employee shall not directly or indirectly:

> 7.1    Contact, solicit, advise or consult, any IN Motion Sales Representative or any Customer of any Sales Representative or any IN Motion Customer (as hereinafter defined) with which Employee has had direct or indirect contact during the term of, or arising from, their employment by IN Motion, for the purpose of causing such Customer to purchase, license or otherwise obtain products or services

which are similar to or in any way compete with the products or services sold or provided by IN Motion or its Sales Representatives.

7.2    Induce, or attempt to induce, any IN Motion Sales Representative or any Customer of any Sales Representative or any IN Motion Customer with which Employee has had direct or indirect contact during the term of, or arising from, their employment by IN Motion, to cancel, diminish, decrease or curtail any business relationship, contractual or otherwise, with IN Motion or its Sales Representatives.

7.3    Contact, solicit, induce or attempt to induce or influence any employee, independent contractor or agent of: a) any IN Motion Sales Representative or b) any IN Motion or its Sales Representative's Customer or c) IN Motion to terminate his or her employment, engagement or contractual relationship with any of the Companies or Customers identified in this sub paragraph 7.3.

(Ex. 1, at §§ 7.1-7.3.)

**RESPONSE: The Agreement speaks for itself. To the extent Paragraph 19 is inconsistent with the terms of the Agreement, McFarren denies the remaining allegations in Paragraph 19.**

20.    Section 8 establishes a non-competition period, stating:

COVENANTS AGAINST COMPETITION. During the period of Employee's employment, and for a period of 18 months (1.5) years following the Termination Date, the Employee shall not, within the Restricted Area (as hereinafter defined), directly or indirectly:

8.1    Assist or have an interest in (whether or not such interest is active), whether as partner, investor, stockholder, officer, director or as any type of principal whatever, or

8.2    Enter into the employment of, or act as an independent contractor or agent for, or advisor or consultant to, any person, firm, partnership, association, corporation or business organization, entity or enterprise including by way of example, but not limited to any hospital, orthopaedic surgeon, orthopaedic surgical group, orthopaedic surgical center or any orthopaedic surgical device manufacturer, distributor, agent, or representative that manufactures, purchases or sells, is or is about to manufacture, purchase or sell directly or indirectly or is engaging in any business activity (whether such enterprise is in operation or in the planning or development stage) that competes in any manner or consumes product competitive with the business conducted by IN Motion.

(Ex. 1, at §§ 8.1-8.2.)

7

**RESPONSE: The Agreement speaks for itself. To the extent Paragraph 20 is inconsistent with the terms of the Agreement, McFarren denies the remaining allegations in Paragraph 20.**

21. Section 12.4 defines the "Restricted Area" to include the Northern Illinois counties McFarren managed, stating:

> "Restricted Area" shall mean collectively the following counties in The State of Illinois: Bureau, Cook, DeKalb, DuPage, Grundy, Iroquois, Kane, Kankakee, Lake, Lee, LaSalle, Livingston, McHenry, Ogle, Stephenson, Whiteside, Will, and Winnebago; and the following counties in Wisconsin: Rock.

(Ex. 1, at § 12.4.)

**RESPONSE: The Agreement speaks for itself. To the extent Paragraph 21 is inconsistent with the terms of the Agreement, McFarren denies the remaining allegations in Paragraph 21.**

22. McFarren acknowledged in Section 10.1 that a breach of these Restrictions would result in irreparable injury, stating:

> Injunctive Relief. Employee hereby acknowledges and agrees that IN Motion would be irreparably injured, the value of the business of IN Motion would be irreparably damaged, and IN Motion could not adequately be compensated by monetary damages, if Employee were to violate the terms of Sections 6, 7, 8 or 9 of this Agreement (collectively the "Restrictions"). Employee covenants and agrees that, if Employee shall violate any of the Restrictions, IN Motion specifically shall be entitled to injunctive and other equitable relief to enjoin Employee's violations of such Restrictions. Employee agrees to (i) not oppose such injunctive relief, and (ii) pay all court costs and attorney fees IN Motion incurs in seeking or obtaining injunctive relief.

(Ex. 1, at § 10.1.)

**RESPONSE: The Agreement speaks for itself. To the extent Paragraph 22 is inconsistent with the terms of the Agreement, McFarren denies the remaining allegations in Paragraph 22.**

23.     On November 19, 2025, McFarren's position was eliminated due to a restructuring of IN Motion's management team in Northern Illinois.

**RESPONSE: McFarren admits the allegations in Paragraph 23.**

24.     Upon the elimination of his position, IN Motion acted in good faith and offered McFarren a prorated bonus and performance incentive for the months he worked in 2025 in exchange for executing a separation agreement, even though IN Motion was under no contractual obligation to offer such a bonus. McFarren declined to sign the paperwork and separation agreement, and therefore the discretionary bonus was not paid. However, IN Motion paid McFarren in full for all compensation and wages owed in accordance with his Employee Agreement.

**RESPONSE: McFarren admits the allegations in Paragraph 24.**

25.     Shortly thereafter, in December 2025 or January 2026, McFarren accepted a Regional Sales Manager position with Defendant Stryker focusing on Northern Illinois. Upon information and belief, based on his identical job title, territory, and communications with IN Motion's customers, Stryker employed McFarren to perform substantially the same sales and management duties—selling competing joint reconstruction and robotic equipment—that he managed for IN Motion. This makes his employment with Stryker a competitive threat to IN Motion's business interests.

**RESPONSE: McFarren admits that he accepted employment with Defendant Stryker on January 19, 2026. McFarren denies the remaining allegations contained in Paragraph 25.**

26.     Stryker is a direct competitor of IN Motion and DePuy Synthes in the joint reconstruction and robotic equipment market. Under the plain language of Section 8.2 of the

Agreement, McFarren's entering into the employment of a direct competitor like Stryker within the Restricted Area constitutes an immediate breach of his non-competition obligations.

**RESPONSE: McFarren lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Stryker is a direct competitor of IN Motion and DePuy Synthes in the joint reconstruction and robotic equipment market, and therefore denies those allegations. McFarren denies the remaining allegations in Paragraph 26.**

27.    Upon joining Stryker, McFarren engaged in competitive activities within his Restricted Area by soliciting IN Motion's customers. Operating on behalf of Stryker, McFarren initiated contact with Loyola University Health System to secure a meeting aimed at diverting the joint reconstruction and robotics business of Dr. Nicholas Brown away from IN Motion and over to Stryker.

**RESPONSE: McFarren denies the allegations in Paragraph 27.**

28.    Furthermore, McFarren breached the Agreement's non-solicitation provisions before any products were ever sold. IN Motion Team Leader Joe Ortinau recently received communications from Matt Eggert, an employee of Loyola University Health System who is involved in contract negotiations for joint reconstruction products, pricing, and orthopaedic robotic capital equipment. Eggert stated that he was scheduling a meeting with Ortinau's "ex-coworker" (McFarren) on behalf of Stryker, targeting IN Motion's business with Loyola and surgeon customer Dr. Nicholas Brown. Under Sections 7.1 and 7.2 of the Agreement, the simple act of McFarren contacting Loyola to set up this meeting constitutes a violation of his obligations not to "contact," "solicit," or "attempt to induce" IN Motion's customers.

**RESPONSE: McFarren denies the allegations in Paragraph 28.**

29.     These coordinated actions constitute an ongoing violation of the territory restrictions, non-solicitation clauses, and confidentiality provisions in McFarren's Agreement.

**RESPONSE: McFarren denies the allegations in Paragraph 29.**

### COUNT I
### (Breach of Contract – Against Defendant McFarren)

30.     Plaintiff incorporates the prior paragraphs 1-29 as if fully set forth herein as and for this Paragraph 30.

**RESPONSE: McFarren incorporates by reference his responses to Paragraphs 1 through 29 as if fully set forth herein. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 30.**

31.     The Agreement is a valid and enforceable contract under Indiana law, supported by adequate consideration including continued employment, compensation, and access to proprietary trade secrets.

**RESPONSE: The allegations in Paragraph 31 consist of legal conclusions to which no response is required. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 31.**

32.     The restrictive covenants are ancillary to a valid relationship and are reasonable in time, geography, and scope.

**RESPONSE: The allegations in Paragraph 32 consist of legal conclusions to which no response is required. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 32.**

33.     McFarren breached the Agreement by:

a.     Engaging in competitive business activities for Stryker within the Restricted Area during the 18-month restricted period;

11

b.    Soliciting IN Motion's customers, including Loyola University Health System, during the 2-year restricted period;

c.    Entering into the employment of Stryker, a direct competitor, within the Restricted Area during the 18-month restricted period, which in and of itself constitutes a direct violation of Section 8.2 of the Agreement;

d.    Contacting IN Motion's customers, including Matt Eggert and Dr. Nicholas Brown at Loyola University Health System, to set up a meeting on behalf of Stryker. The simple act of initiating this contact to set up a meeting constitutes a direct violation of the non-solicitation prohibitions in Sections 7.1 and 7.2; and

e.    Using or disclosing IN Motion's Confidential Information, including pricing strategies, to unfairly undercut IN Motion's robotic acquisition proposals.

**RESPONSE: McFarren denies the allegations in Paragraph 33.**

34.    As a direct and proximate result, IN Motion has suffered and will continue to suffer material and irreparable loss.

WHEREFORE, Plaintiff IN Motion Orthopaedics West, Inc. respectfully requests that this Court:

A.    Enter a preliminary injunction and, thereafter, a permanent injunction enjoining McFarren from competing with IN Motion by selling, promoting, or supporting joint reconstruction implants, robotic capital equipment, or other competing orthopedic products within the Restricted Area (as defined in Section 12.4 of the Agreement), soliciting IN Motion's customers or employees, and using or disclosing IN Motion's Confidential Information;

B.    Toll the expiration of the restricted periods from the date of the initial breach until the date of the Court's ruling, pursuant to Section 13.13 of the Agreement;

C.    Award Plaintiff compensatory damages in an amount to be determined at trial;

D.    Award Plaintiff its reasonable attorneys' fees, court costs, and expenses pursuant to Section 13.12 of the Agreement; and

E.    Grant such other relief as the Court deems appropriate and just.

**RESPONSE: McFarren denies the allegations in Paragraph 34, including any right to relief.**

## COUNT II
### (Tortious Interference with Contract & Business Relationships – Against Defendant Stryker)

35.     Plaintiff incorporates the prior paragraphs 1-34 as if fully set forth herein as and for this Paragraph 35.

**RESPONSE: McFarren incorporates by reference his responses to Paragraphs 1 through 34 as if fully set forth herein. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 35.**

36.     A valid and enforceable contract existed between IN Motion and McFarren. Additionally, IN Motion had established valid business relationships and ongoing contractual negotiations with its customers, including Loyola University Health System.

**RESPONSE: The allegations in Paragraph 36 consist of legal conclusions to which no response is required. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 36.**

37.     Stryker had actual knowledge of the Agreement and McFarren's restrictive covenants. Stryker knew of these restrictions through standard industry hiring practices and McFarren's own disclosures during the hiring process. Despite receiving actual notice of the Agreement, Stryker continued to send McFarren into restricted hospitals.

**RESPONSE: McFarren denies being sent to restricted hospitals. McFarren further states that the phrases "restrictive covenants" and "during the hiring process" are vague and undefined as used in Paragraph 37, and therefore denies the remaining allegations in Paragraph 37.**

38.     Despite this knowledge, Stryker intentionally and unjustifiably induced and continues to induce McFarren to breach the Agreement by employing him as a Regional Sales Manager to cover the exact restricted territory he agreed to avoid.

13

**RESPONSE: McFarren denies the allegations in Paragraph 38.**

39.    Stryker's interference was committed without justification and for the illegal purpose of unfair competition, specifically leveraging McFarren to undercut IN Motion's robotic acquisition proposals.

**RESPONSE: McFarren denies the allegations in Paragraph 39.**

40.    As a direct result, IN Motion has suffered damages, including lost profits and loss of corporate goodwill.

WHEREFORE, Plaintiff IN Motion Orthopaedics West, Inc. respectfully requests that this Court:

A.    Enter a preliminary injunction and, thereafter, a permanent injunction enjoining Stryker from utilizing McFarren in any capacity to sell or promote joint reconstruction implants, robotic capital equipment, or other competing orthopedic products within the Restricted Area (as defined in Section 12.4 of the Agreement);

B.    Award Plaintiff compensatory damages in an amount to be determined at trial;

C.    Award Plaintiff punitive damages due to Stryker's malicious and willful conduct; and

D.    Grant such other relief as the Court deems appropriate and just.

**RESPONSE: McFarren denies the allegations in Paragraph 40, including any right to relief.**

### COUNT III
### (Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836 – Against All Defendants)

41.    Plaintiff incorporates the preceding paragraphs 1-40 as if fully set forth herein as and for this Paragraph 41.

**RESPONSE: McFarren incorporates by reference his responses to Paragraphs 1 through 40 as if fully set forth herein. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 41.**

14

42.     IN Motion possesses trade secrets, defined as "Confidential Information" in Section 12.1 of the Agreement as follows:

Confidential Information shall mean all Inventions (as defined below), and all information or material which is not generally known to the public (i) which is disclosed to Employee by IN Motion; or (ii) knowledge of which or access to which is obtained by the Employee as a result of or arising from Employee's employment by IN Motion. Confidential Information shall include, but is not limited to, the following: pricing formulas, strategies, product designs, drawings, training materials, processes, procedures, research, developments, discoveries, know-how, trade secrets, sales or marketing techniques or materials, Customer names and all other information relating to Customers, price lists, pricing policies, account history, business or operational strategies, products in development, and any and all financial information relating to IN Motion, its Sales Representatives or their respective Customers, employee lists, supplier lists, prospect lists, commission strategies or incentives. In addition, any of the foregoing information which IN Motion obtains from another person and which either corporation or such other person treats as proprietary or designates as confidential information, shall be considered Confidential Information.

(Ex. 1, at § 12.1.)

**RESPONSE: Paragraph 42 calls for legal conclusions, including with respect to what constitutes "trade secrets," to which no response is required. The Agreement also speaks for itself. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 42.**

43.     These trade secrets relate to products and services used in interstate commerce.

**RESPONSE: McFarren incorporates by reference his response to Paragraph 42 as if fully set forth herein. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 43.**

44.     IN Motion has taken reasonable measures to keep such information secret, including requiring execution of the Agreement.

15

**RESPONSE: McFarren incorporates by reference his response to Paragraphs 42 and 43 as if fully set forth herein. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 44.**

45.    Defendants' misappropriation is evidence by their actions following McFarren's retention. Before his termination, McFarren had knowledge of IN Motion's confidential pricing for Loyola University Health System. Almost immediately upon joining Stryker, McFarren used his new position to initiate contact and secure a meeting with Loyola regarding competitive robotic capital equipment. Because McFarren is now targeting the exact same restricted account on behalf of a direct competitor, IN Motion alleges upon information and belief that Defendants are utilizing McFarren's knowledge of IN Motion's pricing to unfairly compete for and undercut IN Motion's business with Loyola and Dr. Brown.

**RESPONSE: McFarren denies the allegations in Paragraph 45.**

46.    Defendants' misappropriation was willful and malicious, entitling IN Motion to exemplary damages and attorneys' fees under 18 U.S.C. § 1836.

WHEREFORE, Plaintiff IN Motion Orthopaedics West, Inc. respectfully requests that this Court:

A.    Enter a preliminary injunction and, thereafter, a permanent injunction enjoining Defendants from further misappropriation, use, or disclosure of IN Motion's trade secrets;

B.    Enter an Order compelling Defendants to immediately return all physical and electronic copies of IN Motion's Confidential Information, and to submit their personal and corporate electronic devices, email accounts, and cloud storage accounts for forensic imaging and data remediation;

C.    Award Plaintiff compensatory damages, exemplary damages, and reasonable attorneys' fees as permitted by statute; and

D.    Grant such other relief as the Court deems appropriate and just.

**RESPONSE: McFarren denies the allegations in Paragraph 46, including any right to relief.**

16

## COUNT IV
### (Violation of Indiana Uniform Trade Secrets Act – Against All Defendants)

47.     Plaintiff incorporates the preceding paragraphs 1-46 as if fully set forth herein as and for this Paragraph 47.

**RESPONSE: McFarren incorporates by reference his responses to Paragraphs 1 through 46 as if fully set forth herein. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 47.**

48.     The Confidential Information described above constitutes "trade secrets" under Ind. Code § 24-2-3-2.

**RESPONSE: Paragraph 48 calls for legal conclusions, including with respect to what constitutes "trade secrets," to which no response is required. The Agreement also speaks for itself. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 48.**

49.     This information derives independent economic value from not being generally known.

**RESPONSE: McFarren incorporates by reference his response to Paragraph 48 as if fully set forth herein. To the extent a response is deemed required, McFarren denies the allegations contained in Paragraph 49.**

50.     Defendants have misappropriated these trade secrets in violation of Indiana law.

**RESPONSE: McFarren denies the allegations in Paragraph 50.**

51.     As a direct result, IN Motion has suffered and continues to suffer significant damages.

WHEREFORE, Plaintiff IN Motion Orthopaedics West, Inc. respectfully requests that this Court:

17

A.  Enter a preliminary injunction and, thereafter, a permanent injunction enjoining Defendants from misappropriating IN Motion's trade secrets;

B.  Award Plaintiff compensatory damages, punitive damages, and attorneys' fees as permitted by statute; and

C.  Grant such other relief as the Court deems appropriate and just.

**RESPONSE: McFarren denies the allegations in Paragraph 51, including any right to relief.**

## AFFIRMATIVE DEFENSES

52.  IN Motion's claims are barred, in whole or in part, because its non-compete is unenforceable. IN Motion terminated McFarren, and enforcement of its non-compete under these circumstances is unreasonable.

53.  IN Motion's claims are barred, in whole or in part, to the extent it relies on Indiana law given that McFarren is a resident of Illinois and worked in Illinois for IN Motion.

54.  IN Motion's claims are barred, in whole or in part, by the doctrine of waiver. Through its conduct, including its termination of McFarren, IN Motion knowingly and voluntarily relinquished any right to enforce its non-compete.

55.  IN Motion's claims are barred, in whole or in part, by the doctrine of equitable estoppel. By terminating McFarren, IN Motion induced reasonable reliance that it would not enforce its non-compete, and McFarren acted to his detriment in reliance on that conduct. IN Motion is therefore estopped from enforcing its non-compete.

56.  IN Motion's claims are barred, in whole or in part, by the doctrine of unclean hands. IN Motion has engaged in inequitable conduct with respect to the subject matter of its claims, including conduct relating to its termination of McFarren and its attempt to now enforce an unenforceable non-compete.

## PRAYER FOR RELIEF

WHEREFORE, McFarren respectfully requests that this Court:

A.      Dismiss the Complaint with prejudice;

B.      Enter judgment in favor of McFarren;

C.      Award costs and attorneys' fees as permitted; and

D.      Grant such other relief as the Court deems just and proper.

Dated: May 26, 2026        Respectfully Submitted,

**SEYFARTH SHAW LLP**

By: */s/ Jesse M. Coleman*_____
    Jesse M. Coleman
    Texas Bar No. 24072044
    Email: jmcoleman@seyfarth.com
    *admitted pro hac vice*
    Yumna Khan
    Texas Bar No. 24134467
    Email: ykhan@seyfarth.com
    *admitted pro hac vice*
    700 Milam, Suite 1400
    Houston, TX 77002
    Telephone: (713) 238-1805
    Facsimile: (713) 225-2340

    Michael D. Wexler
    Illinois Bar No. 6207847
    mwexler@seyfarth.com
    *admitted pro hac vice*
    233 South Wacker Drive, Suite 8000
    Chicago, Illinois 60606
    Telephone: (312) 460-5000
    Facsimile: (312) 460-7000

    AND

    TUOHY BAILEY & MOORE LLP
    Christopher C. Hagenow
    Attorney No. 16730-49
    9294 N Meridian Street
    Indianapolis, IN 46260
    (317) 638-2400
    Email: chagenow@tbmattorneys.com

*ATTORNEYS FOR JOHN (GREG) MCFARREN AND STRYKER EMPLOYMENT COMPANY, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on May 26, 2026, I electronically filed the foregoing document with the

Clerk of the Court using the CM/ECF system and e-served same to following counsel of record:

Stephen W. Heil
Zachary G. Shook
Cray Huber Horstman Heil & VanAusdal LLC
303 West Madison Street, Suite 2200
Chicago, Illinois 60606
swh@crayhuber.com
zgs@crayhuber.com

***ATTORNEYS FOR PLAINTIFF IN
MOTION ORTHOPAEDICS WEST, INC.***


*/s/ Jesse M. Coleman*_____
Jesse M. Coleman